GODERICH, Judge.
The plaintiff, the City of Miami [City], appeals from a final order striking certain ahegations from its complaint as a sham and from a final order dissolving a hs pendens. We affirm.
On September 2, 1988, the City lent the Urban League of Greater Miami [Urban League] $372,000.00. In turn, the Urban League executed a promissory note and a mortgage that was secured by four parcels of land [Parcels I-IV]. In 1990, the Urban League executed a Modification of Note and Mortgage. Thereafter, the Urban League conveyed Parcel IV to King Heights Apartments Partnership [King Heights].
On July 17, 1995, City Manager Cesar Odio executed a Release of Lien for Parcel IV. On August 29, 1995, a certified copy of the Release of Lien was recorded in the official pubhc records of Miami-Dade County. Meanwhile, on August 25, 1995, King Heights conveyed Parcel IV to the Family Resource Center of South Florida, Inc. [FRC], a not-for-profit social service agency that provides community-wide child welfare and family services. On August *1097 31, 1995, the Warranty Deed was recorded in the official public records of Miami-Dade County.
In 2002, FRC raised $8 million to renovate the buildings located on Parcel IV and provide housing, counseling and educational services to homeless or low-income families. As part of those monies, FRC secured a $275,000 grant from the State of Florida.
On April 24, 2002, the City filed- suit against the Urban League, FRC, and others alleging that the Urban League had defaulted on the promissory note and seeking to foreclose on the four parcels that secured the note, including Parcel IV. The City also recorded a lis pendens on each of the four parcels.
On April 29, 2002, FRC was served with the complaint. On April 30, 2002, FRC contacted the Assistant City Attorney, by telephone and by letter, and informed her that in 1995, before FRC purchased the property, the City had executed and delivered a Release of Lien for Parcel IV specifically describing the instruments that the City was seeking to foreclose. FRC attached a copy of the Release of Lien. FRC also advised the City that its lawsuit and the lis pendens filed on Parcel IV were an impediment to the funding of its renovations project and that it would be damaged if the error was not timely corrected as the funds that it was receiving from a grant needed to be expended by a date certain or they would be lost.
On May 1, 2002, FRC, by letter, informed the Assistant City Attorney that it had reviewed the 1995 closing files and enclosed copies of letters and documents that evidenced the negotiations that led to the execution of the Release of Lien and confirmed its execution.
On that same day, the City responded by letter stating that the Release of Lien did not appear in the title search report it had conducted before filing the foreclosure action. The City also raised “concerns regarding the apparent lack of consideration for the release and the apparent lack of authority for execution of the release by the then city manager” and stated that the documents that were forwarded did not fully address or allay those concerns. The City indicated that it would move expeditiously to address the matter. Lastly, the City asserted, “However, based on the available documentation, we áre not in a position to conclude that the release of lien document is anything other than an ultra vires act by the then city manager.”
Oh May 22, 2002, FRC filed a verified emergency motion to strike the allegations in the City’s complaint regarding Parcel IV as a sham. FRC argued that it needed to move forward immediately with the development of the property and that it should be permitted to do so because of the Release of Lien. FRC asked that the allegations in the complaint regarding Parcel IV be stricken as a sham and that Parcel IV be released from the lis pen-dens.
On May 28, 2002, FRC faxed a notice of hearing to the Assistant City Attorney stating that a hearing on the motion to strike was- set for May 24, 2002, at 2:00 p.m. The Assistant City Attorney responded to the notice by requesting “all of the exhibits upon which you rely in support of your motion” and “any case law or other legal authority in support of your motion.” In response, on May 23, 2002, FRC faxed the Assistant City Attorney a copy of the exhibits attached to motion to strike.
At the hearing, FRC presented its verified emergency motion and all of the exhibits that were attached including the Warranty Deed dated August 25, 1995, the Release of Lien, correspondence relating to- the negotiation of the Release of Lien, *1098 and the recent correspondence between FRC and the City that was detailed above. Further, FRC presented the testimony of the Urban League’s attorney who negotiated the Release of Lien. He testified that the City executed the Release of Lien because it was beneficial to do so because the Urban League needed to sell the property so that it could continue to make payments on its debt to the City. FRC also presented the Miami-Dade County Attorney’s testimony that the lis pendens on Parcel IV created funding problems and that absent a charter or code provision or administrative order prohibiting the city manager and the city attorney from executing a release of hen, it should be assumed that they had the authority to do so.
The Assistant City Attorney argued that the FRC should go to the City Commission to have the release ratified because she believed that it was the result of an ultra vires act by the then City Manager without the City Commission’s authority. When asked for an ordinance or other evidence showing that the then City Manager did not have the authority to enter into this type of release, the Assistant City Attorney stated that she did not have sufficient notice to brief the matter.
The trial court heard the remaining arguments of counsel and found that the Assistant City Attorney was on notice of the hearing, that she did not bring any evidence to controvert FRC’s motion, and that immediate action was necessary to preserve FRC’s funding. The trial court granted FRC’s motion to strike the allegations in the complaint relating to Parcel IV and dissolved the City’s lis pendens on Parcel IV. The City’s appeal follows.
The City contends that the trial court erred by striking the allegations in the City’s complaint regarding Parcel IV. First, the City contends that it was denied due process because it did not receive sufficient notice of the evidentiary hearing. Under the circumstances of this case, we disagree.
A review of the record shows that although the City received one-day notice of the hearing, it had ample notice of the issues and evidence that were to be presented. A review of the correspondence between FRC and the City dated May 1, 2002, indicates that the City recognized the need to resolve the matter quickly, that the City knew the exact arguments that FRC was raising, and that FRC had provided the City with copies of the documents that FRC had to support its position. The City had twenty-three days to investigate FRC’s claims but did not do so. “This is not a case of a surprise hearing where an unprepared party is forced to litigate an issue it has not yet analyzed.” Couture Farms, Inc. v. Triton Int’l, Inc., 682 So.2d 578, 579 (Fla. 3d DCA 1996). As early as May 1, 2002, the City suspected that the release might be an ultra vires act of the then City Manager, but the City, knowing that FRC was in jeopardy of losing its funding, did nothing for twenty-three days to verify that its position was justified. Further, at no time did the City ever move for a continuance. The City only stated that it had not had sufficient time to brief the matter. For these reasons, we reject the City’s contention that it was denied due process.
Next, the City argues that FRC did not establish that the complaint was “palpably or inherently false.” St. John Med. Plans v. Physician Corp. of Am., 711 So.2d 1329, 1331 (Fla. 3d DCA 1998). We disagree.
At the hearing, FRC presented its verified emergency motion, the Release of Lien, the Warranty Deed dated August 25, 1995, correspondence relating to the Release of Lien, the testimony of the Urban *1099 League’s attorney who negotiated the Release of Lien, and the testimony of the Miami-Dade County Attorney who testified that FRC’s funding was in jeopardy. Further, the City failed to rebut FRC’s evidence when it failed to present any evidence of a charter or code provision or administrative order that prohibited the city manager from executing the release of lien.
Therefore, because the tmcontroverted evidence established that the City had released its lien, the trial court properly struck the allegations of the complaint regarding Parcel IV and dissolved the corresponding lis pendens.
Accordingly, we affirm.
FLETCHER, J., concurs.